**In re David E. JACKSON, aka David Earl Jackson, Debtor.**

**CITY OF AKRON, Plaintiff,**

**v.**

**David E. JACKSON, Defendant/Debtor.**

**Bankruptcy No. 586–1196.**
**Adv. No. 586–0314.**

United States Bankruptcy Court, N.D. Ohio.

June 24, 1987.

George A. Bozeka, Asst. Director of Law, Akron, Ohio, for plaintiff.

Richard Romweber, Akron, Ohio, for defendant/debtor.

## FINDING AS TO DISCHARGEABILITY OF DEBT

H.F. WHITE, Bankruptcy Judge.

The city of Akron on December 8, 1986 filed a complaint to determine the dischargeability of a debt involving a collision on March 9, 1986 of a fire truck owned by the city of Akron and a vehicle driven by the debtor. The city of Akron subsequently amended its complaint on December 22, 1986. The debtor filed an answer to the complaint and filed several amended answers, the last one being filed on May 1, 1987.

The matter was duly scheduled for trial and all parties appeared represented by counsel. It was stipulated by the parties that the medical records of David E. Jackson which were taken on the date of admission to the hospital, March 9, 1986, consisting of 71 pages in length, would be admitted into evidence. It was further stipulated that the damage to the fire truck owned by the city of Akron amounted to $6,948.50. From the testimony of the witnesses, the court makes the following additional finding of facts.

## FINDING OF FACTS

1. On March 9, 1986 David E. Jackson was traveling at an excessive rate of speed and failed to yield the right of way at a red light. He was proceeding south on South High Street and at the intersection at Bartges Street he collided with a fire engine driven by Forest L. Thorn of the Akron Fire Department which was proceeding East on Bartges.

2. The fire engine was returning from a call at the Akron Recycle Energy Plant. Forest Thorn admitted that while proceeding East on Bartges Street the light was red; he proceeded to slow down but did not stop and entered the intersection just as the light turned green. The court finds from the testimony of Gene Colbert of the Traffic Engineering Department of the city of Akron that the light at Bartges Street and High Street was functioning at the time of the accident. He further testified that the light at Bartges Street would be activated by approaching traffic as Bartges Street carried a minor amount of traffic. The damage to the fire truck was to the left front side of the vehicle and the right front side of the vehicle driven by Jackson was damaged.

3. The debtor admitted consuming some alcoholic beverages at a friend's house approximately two hours before the accident. Lowell A. Weir, a fireman on the truck and also a paramedic, indicated that the debtor suffered a head injury and that he smelled alcohol at the scene of the accident.

4. A police investigation was made at the scene of the accident while the debtor was at the scene. See, traffic report, Defendant's Exhibit 1. The debtor was charged with driving through a red light and having no driver's license. On April 16, 1986 he pled guilty to said charge in the Municipal Court of Akron. See Defendant's Exhibit 2. The police report indicated that the only contributing factor was that he ran a red light. The report was negative as to alcohol as no alcohol was detected by the investigating police officer who observed the defendant. Therefore, he was never charged with a violation of § 4511.19 of the Ohio Revised Code, driving while under the influence of alcohol. The debtor did sustain bodily injuries, including a blow to the head, and was treated for said injuries at Akron General Medical Center. See Plaintiff's Exhibit 1, the medical report pages 1–71 inclusive.

5. Page 22 of plaintiff's Exhibit 1, the medical report, indicates the debtor's blood chemistry, ethanol, to be 158.9 mg/dL. The guideline underneath this listing indicates that all individuals with a listing above 100 mg/dL would be under the influence. This fact was called to the attention of the court; however, there was no explanation to the court as to the meaning of this report by the plaintiff's attorney or the defendant's attorney.

6. On August 29, 1986 the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code and included the city of Akron as an unsecured creditor for property damages and other creditors were listed for medical claims. The debtor's statement of affairs indicated that there were no suits pending against him nor were there any judgments within a one-year period. There was no judgment obtained by the city of Akron indicated on the debtor's schedules.

7. On December 8, 1986 the city of Akron filed a proof of claim in the amount of $6,948.50, which the debtor does not deny. On December 24, 1986 the court entered an order denying relief from stay to the city of Akron as the city of Akron had already filed its adversary proceeding to determine the dischargeability of the debt and the parties had stipulated to the jurisdiction of this court and the amount of damages sus-

tained as well as the authenticity of the medical records. The only issue for determination is the dischargeability of the debt.

## II. ISSUE

Whether a debt, not reduced to judgment in a state court arising from a liability incurred by the debtor while operating a motor vehicle while under the influence of alcohol, is nondischargeable pursuant to § 523(a)(9) of the Bankruptcy Code?

## III. DISCUSSION

■ Section 523(a)(9) excepts from discharge under § 727 any debt:

to any entity, to the extent that *such debt arises from a judgment or consent decree* entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred;
. . .

11 U.S.C. § 523(a)(9) (Collier 1986) (emphasis added). Although § 523(a)(9) clearly describes the subject debt as one arising from a judgment or consent decree, some courts have ignored this requirement, or at least, have taken a very relaxed interpretation of this requirement. In *Searight v. Thomas (In re Thomas)*, 51 B.R. 187 (Bankr.E.D. Va.1985) (J. Bonney) the court noted that § 523(a)(9) was intended to close the loophole by which drunk drivers were given protection in those states where such conduct is considered only negligent conduct, not willful and malicious conduct and therefore ' not nondischargeable under § 523(a)(6). *Id.* at 188. But the court noted that it becomes a race to the courthouse under the new statute with the debtor having a clear advantage since it takes "considerably longer to obtain a judgment than it does to file bankruptcy." *Id.* at 189. *"[A]bsent a dilatory debtor, one injured can still not prevail." Id.* (emphasis in original). Accordingly, the court used its equitable powers to grant the plaintiff

leave to prosecute its claim in the state court, subject to the continuing jurisdiction of the bankruptcy court over the dischargeability issue. The *Thomas* case is distinguishable, however, since the administratrix of the estate of the deceased had filed a suit in state court which was set for trial on April 24, 1985, and the debtor had filed his petition on April 5, 1985.

In *Thomas v. Ganzer (In re Ganzer)*, 54 B.R. 75 (Bankr.D.Minn.1985) the judge expressed even stronger condemnation of a literal interpretation of § 523(a)(9):

Presumably, Congressional intent in enacting 11 U.S.C. § 523(a)(9) was to preclude a debtor's discharge from liability on a claim arising out of the operation of a motor vehicle while under the influence of alcohol. If a *prepetition* judgment determining liability to have been incurred by the debtor under such circumstances, be required, the statute is practically useless. Only in cases of legal malpractice will prepetition judgments ever be entered. This Court will not presume Congress to have intended to sabotage its legislation and create such an absurdity.

*Id.* at 76–77. The *Ganzer* court interpreted the statute to give it "effect and utility" and denied the debtors' motions for summary judgment where creditors had filed state court actions prior to the petition. However, both creditors in this consolidated proceeding beat the debtors at least to the door of the state courthouse, and civil actions for damages were pending against both debtors. One debtor had already been convicted of driving while under the influence. The bankruptcy court held an evidentiary hearing as to one case, and lifted the automatic stay as to the other which permitted the state court to liquidate that claim.

In *Ross v. Carney (In re Carney)*, 68 B.R. 655 (Bankr.D.N.H.1986) the bankruptcy court was called upon to decide whether two debts, each arising from the same automobile accident more than six years before the petition was filed, one debt having been reduced to judgment in state court and the other not, were nondischarge-

able. The court independently evaluated the facts with regard to the state criminal statutes, and held both debts to be nondischargeable under § 523(a)(9) noting that "absence of a judgment prior to bankruptcy has been deemed immaterial" under the section. *Id.* at 656 (citing *Blackmer v. Richards (In re Richards)*, 59 B.R. 541 (Bankr.N.D.N.Y.1986)). In *Richards* the court held that the judgment or decree upon which the exception to discharge depends may be entered post-petition; the debtor had pleaded guilty in state court to a charge of driving while intoxicated and two civil actions were pending against the debtor when he filed his petition. In both the *Carney* and *Richards* cases there was sufficient proof of driving under the influence. The debtor in *Richards* pleaded guilty to the criminal charge. In both cases civil actions had been filed against the debtor, although stayed by the bankruptcy petition.

The debtor in *Dougherty v. Brackett (In re Brackett)*, 51 B.R. 987 (Bankr.D.Colo. 1985) had been charged with driving while under the influence and pleaded guilty to driving while ability impaired, a lesser offense. The court held that the entry of the guilty plea, the restitution order compelling him to pay $10,400, and a promissory note which he signed evidencing the restitutionary obligation to the individual creditor were tantamount to a consent decree. There was no need for the plaintiff to bring a civil action when restitution was a condition of the debtor's probation and he signed a promissory note payable to the plaintiff. *Id.* at 989.

All of the previously cited cases are distinguishable from the instant case. In all these cases the creditor had commenced a civil action against the debtor prior to the petition, or the need to do so was obviated, except in one instance where a co-victim had filed a civil action. In the instant case, the city of Akron was not dilatory; the accident occurred only five months prior to the filing of the petition. The city even sought leave to file a civil action against the debtor, and subsequently, submitted the matter to this court for determination of the issue of damages in the adversary proceeding. However, the court must draw the line of demarcation somewhere. The express language of the statute requires that the debt arise "from a judgment or consent decree." *See also*, 28 U.S.C. § 157(b)(5) (Collier 1986). If the language of the revised statute is to be given any deference at all, it would seem that as a preliminary consideration of the invocation of nondischargeability pursuant to § 523(a)(9), the civil action must have at least been commenced in state court.

A debt, although not nondischargeable under § 523(a)(9) for failure to reduce to state court judgment or consent decree, may be nondischargeable under § 523(a)(6). *Bippus v. Moore (In re Moore)*, 53 B.R. 259 (Bankr.S.D.Ohio 1985), *See also, Avitto v. Cardona (In re Cardona)*, 50 B.R. 596 (Bankr.S.D.Fla.1985). However, the plaintiff in the instant case failed to allege nondischargeability pursuant to § 523(a)(6). That relief is precluded.

Even if this court would hold that a motion for relief from stay to file a state court civil action for damages arising from an automobile accident in which the defendant allegedly was operating his vehicle while under the influence, which matter is subsequently submitted to the bankruptcy court, is sufficient to invoke nondischargeability under § 523(a)(9), proof of driving under the influence in this case is weak, at best. Although the testimony of an eyewitness at this trial indicated that the debtor smelled of alcohol and seemed confused, the debtor was never charged with driving under the influence of alcohol. Moreover, the debtor had sustained a head injury. *See, e.g.,* Ohio Rev. Code Ann. § 4511.-19(A)(1) (Page 1986 Supp.).

The city offered evidence of blood ethanol content of 158.9 mg/dL, but never established whether this is legal intoxication under the Ohio criminal statute prohibiting driving while under the influence of alcohol. *See* Ohio Rev. Code Ann. at § 4511.-19(A)(2) (concentration of .10% or more by weight of alcohol in blood). The parties stipulated to the authenticity of the medical reports, but did not stipulate that the debt-

or was driving under the influence of alcohol according to the criminal standard required by Ohio law. The burden of proof remained on the city in this regard, and it failed to meet its burden.

## IV. CONCLUSION

An action to determine liability for damages arising from drunk driving must have at least been commenced in a state or other court of appropriate jurisdiction for a debt to be determined nondischargeable pursuant to § 523(a)(9) in a subsequent bankruptcy proceeding. Although a debt not nondischargeable under § 523(a)(9) may be nondischargeable under § 523(a)(6), the city did not seek nondischargeability pursuant to that standard. The adversary complaint of the city of Akron must be denied. A separate order in accordance herewith will be entered.